# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Andrew Kyle Gregerson, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No: 3:17-cv-81 ) |
| Leann K. Bertsch, Director of D.O.C.R.; Colby Braun, Warden of D.O.C.R.; and Tammy Schroeder, Inmate Accounts of D.O.C.R.; all in their individual and official capacities, | ) **REPORT AND RECOMMENDATION** ) ) ) ) ) |
| Defendants. | ) |

Pursuant to 42 U.S.C. § 1983, plaintiff Andrew Kyle Gregerson, an inmate at the North Dakota State Penitentiary, alleges violations of his constitutional rights by state officials. Under 28 U.S.C. § 1915A, the court must conduct an initial screening of any prisoner's complaint which seeks redress from a governmental entity or its employees. If the court determines that the action is frivolous, malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief, the court must dismiss the complaint.

## Summary of Recommendation

Gregerson alleges that the Department of Corrections and Rehabilitation's (DOCR's) policy requiring him to pay court-ordered restitution[1] and overdue

---

[1] In a May 25, 2017 order denying Gregerson's motion to appoint counsel, the court referenced Gregerson's claims concerning "court-ordered restitution." (Doc. #11, p. 2). In response to that order, Gregerson filed a document titled "Affidavit of Clarification of Language." (Doc. #13). In that document, Gregerson states, "I was clear in my claim that the restitution is restitution reduced to a civil judgment by order of the court; I do not have court-ordered restitution. The restitution is reduced to a civil judgment meaning I owe the money civilly, not criminally." (Doc. #13, p. 1). The court recognizes that at a hearing regarding revocation of Gregerson's probation, the district court judge stated, "You owe the money civilly still, all $12,000 bucks. It is a lot of

supervision fees while incarcerated violated his constitutional rights to due process, to equal protection, and to be free from cruel and unusual punishment. (Doc. #7, p. 5; Doc. #7-8, pp. 3-4). He also alleges that the requirement violated his state law rights. (Doc. #7, p. 5). Gregerson contends that the defendants were required to obtain a court order prior to enforcing the policy. But, as discussed below, Gregerson has stated no plausible claim entitling him to relief.[2] His complaint should therefore be dismissed. Additionally, his requests for injunctive relief should be denied.

## Facts

Gregerson pleaded guilty to aggravated assault, and the state court sentenced him to a term of imprisonment followed by supervised probation. State v. Gregerson, Cass County Case No. 09-2012-CR-03119, Doc. ID# 82. The state court ordered Gregerson to pay monthly probation supervision fees[3] and restitution in the amount of $12,515.79, which the court reduced to a civil judgment. Id.

After Gregerson violated the terms of his supervised probation, the state court revoked his probation and sentenced him to an additional term of imprisonment. Id. at

---

money, but you don't owe it criminally." (Doc. #12-1, p. 3). Regardless of the restitution having been reduced to a civil judgment, it is "court-ordered restitution."

[2] Gregerson's requested relief includes (1) a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the defendants from taking his money; (2) a refund of all money taken; (3) and $250,000 in punitive damages. (Doc. #7, p. 7; Doc. #7-9; Doc. #7-10). He also requests "an immediate change of policy on financial obligations." (Doc. #7, p. 7).

[3] A May 10, 2013 amended criminal judgment provided that, pursuant to North Dakota Century Code section 12.1-32-07, Gregerson pay the statutorily required probation supervision fee of $45.00 per month. See Gregerson, Case No. 09-2012-CR-03119 at Doc. ID# 82. But, on August 1, 2013, the statutory minimum monthly fee was increased to $55.00. Gregerson's supervision fees totaled $550.00, which accrued from June 2015 through March 2016. (See Doc. #7-2).

Doc. ID# 100. During Gregerson's second term of imprisonment, the DOCR notified him, in writing, that it would deduct money from his inmate account for the court-ordered restitution and past supervision fees. (Doc. #10-1, p. 3). Gregerson checked a box on the written notice, indicating that he did not agree to pay those financial obligations. Id. The box Gregerson checked further stated:

> I . . . understand that this is my notice that I will be given a due process hearing within the next 10 working days, but at least 24 hours from now, where I will be able to present evidence why funds should not be withdrawn. I understand I have the right to appeal the decision to the Director of the DOCR.

Id. Gregerson signed and dated the document on October 25, 2016. Id. A hearing was held on December 10, 2016.[4] Id. Gregerson argued that, since the state court reduced the restitution to a civil judgment, he was not required to make restitution payments while incarcerated. (Doc. #7, p. 5). The hearing officer agreed with Gregerson and recommended that he be required to pay toward the $550.00 in past supervision fees but not toward restitution. Id.; (see also Doc. #7-1; Doc. #10-1, p. 3). Defendant Warden Colby Braun disapproved the hearing officer's recommendation and ordered that Gregerson make payments toward both the overdue supervision fees and restitution in accordance with DOCR policy. Id.

Gregerson appealed Warden Braun's decision. (Doc. 7, p. 5; Doc. #7-1; Doc. #10-1, pp. 1-2). Defendant Director Leann K. Bertsch denied Gregerson's appeal, concluding that, pursuant to North Dakota Century Code section 12-48-15(4), the "warden may withdraw funds from an inmate's penitentiary account to meet the inmate's legitimate financial obligations." (Doc. #10-1, p. 1).

---

[4] It is unclear why the hearing was not held within ten working days.

3

**Standard of Review**

To state a cognizable claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2), as interpreted by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqbal, 556 U.S. 662 (2009), and their progeny. To meet the Twombly/Iqbal standard, a complaint must present a "plausible" claim and must give the defendants fair notice of the claim and grounds upon which it rests. E.g., Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015). When the factual content of a complaint allows the court to reasonably infer that a defendant is liable for the alleged misconduct, the complaint has stated a facially plausible claim. Iqbal, 556 U.S. at 678. In other words, the complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (citing Fed. R. Civ. P. 8(a)(2)).

While facts alleged in the complaint are to be accepted as true, conclusory allegations of the elements of a cause of action are insufficient to state a claim that is plausible on its face. Id. In construing a pro se complaint, a court is to take a liberal approach and is to hold a pro se litigant to a less stringent pleading standard than would be required of attorneys. Erickson v. Pardus, 551 U.S. 89, 93 (2007).

**Law and Discussion**

Under state law, the warden may withdraw funds from an inmate's account to satisfy financial obligations. North Dakota Century Code section 12-48-15(4) provides:

> The warden is responsible for guiding inmates in making proper use of their funds to pay their obligations, including the payment of any administratively ordered fee, fine or restitution, court-appointed counsel fees, court-ordered restitution, support for dependent relatives, or to provide for their own medical, surgical, eye care, or dental treatment, or to pay for other services not generally provided by the state. The warden may withdraw funds from an inmate's penitentiary account or Bank of North Dakota two-signature

4

account, without the inmate's signature, to meet the inmate's legitimate financial obligations. Before the funds may be withdrawn, the inmate must first receive written notice and be provided a penitentiary administrative hearing with the right to appeal according to department of corrections and rehabilitation rules. An inmate is not entitled to prior written notice, administrative hearing, or right to an appeal to the department of corrections and rehabilitation when funds are to be withdrawn for payment of a court-ordered obligation, including child support, provided the inmate has had notice and an opportunity to be heard in the court proceedings.

A portion of the Inmate Handbook, which Gregerson submitted with his complaint, states:

> The DOCR may guide you in making proper use of your funds to pay for financial obligations. **This includes restitution, overdue probation supervision fees, PSI fees, or other money owed to the DOCR.** Although you may not be legally required to pay toward some obligations until your release, DOCR may determine that it is best for you to begin making payments during your incarceration. By developing good financial habits such as making payments towards your financial obligations, you will reduce your financial burdens and be more financially secure upon release. You may have deductions made from your inmate pay and from money received from outside sources to pay toward your financial obligations.

(Doc. #7-5, p. 1).

Gregerson asserts that, since the restitution order was reduced to a civil judgment, he should not have been required to pay toward that debt while incarcerated without an additional court order. (Doc. #7, p. 5). He further asserts that he "has not had a court hearing regarding the past probation supervision fees or the restitution"; thus, he contends he has not been afforded due process. (Doc. #7-9, p. 2).

1.     **Substantive Due Process**

It is unclear whether Gregerson challenges the warden's authority to deduct money from his inmate account for restitution and past supervision fees as a substantive due process claim, but liberally construing the complaint, the court considers it as such.

5

North Dakota Century Code section 12-48-15(4) permits the warden to take money from an inmate's account for court-ordered financial obligations. "Substantive due process claims regarding economic legislation face a highly deferential rational basis test." Koster v. City of Davenport, Iowa, 183 F.3d 762, 768 (8th Cir. 1999). The Eighth Circuit has held that "[l]egislation authorizing the paying of an inmate's restitution debt out of his prison account 'is reasonably related to a legitimate governmental purpose' and therefore satisfies the modern, highly deferential substantive due process standard." Parrish v. Mallinger, 133 F.3d 612, 614-15 (8th Cir. 1998) (quoting Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Ass'n, 110 F.3d 547, 554 (8th Cir. 1997). The same holds true with regard to an inmate's overdue probation supervision fees.[5] Under the highly deferential rational basis standard, Gregerson has not stated a plausible substantive due process claim that would entitle him to relief.

## 2. Procedural Due Process

Inmates have a property interest in their money and are entitled to due process prior to deprivation of that money. Mahers v. Halford, 76 F.3d 951, 954 (8th Cir. 1996) (citations omitted). In determining what process is due, the court must balance three factors: (1) the private interest that would be affected by the official action; (2) the risk of an erroneous deprivation of the private interest through the procedures used, and the probable value of additional or substitute procedures; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the

---

[5] The government has a legitimate purpose in receiving reimbursement for services provided, and legislation authorizing the DOCR to deduct money from an inmate's account for the payment of past probation supervision fees is reasonably related to that purpose.

6

additional or substitute procedural requirement would entail. Id. (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). "In most cases, some type of predeprivation notice and hearing are constitutionally required before a property interest is invaded, but in some situations meaningful postdeprivation remedies are constitutionally sufficient." Parrish, 133 F.3d at 615 (citations omitted).

In his criminal case, the state court ordered that Gregerson pay monthly probation supervision fees and restitution. Gregerson does not dispute the legitimacy or amount of those debts. Rather, he challenges the requirement that he pay toward those debts while incarcerated.

There is no question that Gregerson has an interest in retaining his money. He argues that if he were required to make payments toward his debts while incarcerated, he would be unable to be financially secure upon his release. (Doc. #7-8, p. 4; Doc #10-1, p. 2). But, "inmates are not absolutely deprived of the benefit of their money when part of it is applied toward their restitution [and other] debts." Mahers, 76 F.3d at 954-55. Through the deductions while incarcerated, Gregerson will receive the benefit of reduction of his debts—debts which will survive his incarceration. Further, the risk of erroneous deprivation is limited. Gregerson does not dispute the amount owed, and collection of restitution and overdue supervision fees involve only routine matters of accounting. Finally, the state has an interest in compensating victims, being reimbursed for services provided, teaching inmates responsibility for their behavior, and maintaining control over its penal institutions. See Parrish, 133 F.3d at 615.

Considering the Mathews factors discussed above, the court concludes that Gregerson received adequate procedural protections before the DOCR required that he

pay toward his debts while incarcerated. The DOCR provided Gregerson notice of its intent to assess the financial obligations,[6] he participated in an administrative hearing and had an opportunity to present evidence, he appealed Warden Braun's decision disapproving the hearing officer's recommendation, and he received the DOCR director's written decision denying his appeal. (Doc. #10-1, pp. 1-3).

Gregerson contends that he should have had a court hearing, rather than a DOCR administrative hearing, before the DOCR deducted money from his inmate account to pay toward his legitimate debts. But, due process does not require the court hearing he seeks; courts have held that due process is satisfied when inmates are provided fewer procedural protections than Gregerson received prior to deductions from an inmate account. See Mahers, 76 F.3d at 956 (holding that inmates were not deprived of due process when the correctional facility failed to hold individualized predeprivation hearings prior to deducting money from inmates' accounts for court-ordered restitution); Taylor v. Sebelius, 189 F. App'x 752, 761 (10th Cir. 2006) (unpublished) (holding that due process did not entitle an inmate to a hearing prior to the prison deducting unpaid supervision fees from the inmate's account when the inmate could contest any erroneous deduction through the prison's grievance system). Gregerson received procedural protections adequate under current case law; he therefore has not stated a plausible procedural due process claim that would entitle him to relief.

---

[6] The Inmate Handbook states that the DOCR may determine that it is in an inmate's best interest to make payments toward restitution and overdue probation supervision fees while incarcerated. (Doc. #7-5, p. 1). Thus, the handbook advised him of the potential for having money deducted from his inmate account prior to the written notice.

8

### 3. Equal Protection

To state a plausible claim for violation of an inmate's equal protection rights, a plaintiff must allege that he was treated differently than similarly situated inmates and that no rational basis for the unequal treatment existed. See Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992). Gregerson alleges no facts regarding his treatment being different than any other similarly situated inmate. He has therefore not stated a plausible equal protection claim that would entitle him to relief.

### 4. Cruel and Unusual Punishment

The Eighth Amendment prohibits cruel and unusual punishment. But, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319 (1986). To state a plausible claim for cruel and unusual punishment, a plaintiff must allege two elements: (1) that the alleged violation was objectively serious, and (2) that officials actually knew of but deliberately disregarded a substantial risk of harm. Kulkay v. Roy, 847 F.3d 637, 643 (8th Cir. 2017) (citations and quotation marks omitted). An alleged violation is objectively serious when an inmate is incarcerated under conditions posing a substantial risk of serious harm. Id. (citation and quotation marks omitted).

Gregerson contends that the defendants' withdrawal of money from his account caused him psychological pain, undue hardship, and irreparable harm. (Doc. #7, p. 5). He states he has "nearly lost all hope for [his] future," he has "daily thoughts of giving up," and he has "some suicidal idealization." (Doc. #7-8, p. 5). While Gregerson contends that he has suffered psychological pain, (see Doc. #7, p. 5; Doc #7-8, p. 5), there is no authority stating that an inmate faces a substantial risk of serious harm when

9

a warden, after providing adequate procedural protections, takes money from an inmate's account to make payments toward an inmate's legitimate financial obligations. This court concludes that Gregerson has not stated a plausible Eighth Amendment claim that would entitle him to relief.

5.    **State Law Rights**

Gregerson alleges that, by deducting money from his inmate account, defendants violated his rights under the North Dakota Constitution[7] and three state statutes—North Dakota Century Code sections 28-01-34, 12.1-32-07, and 12.1-32-08(1)(c). But, a state actor's violation of a duty imposed by state law cannot be vindicated in a § 1983 action. Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995). Gregerson has therefore not stated a § 1983 claim that would entitle him to relief for any violation of North Dakota statutes.

Additionally, the court notes that the state statutes Gregerson cited have no impact on his claims. Section 28-01-34 states that no civil action "may be commenced upon a judgment rendered in any court of this state between the same parties within nine years after its rendition, without leave of the court granted for good cause shown and upon notice to the adverse party." Gregerson's claims do not involve any civil action commenced upon a judgment between the same parties. Section 12.1-32-07 involves conditions of supervised probation and revocation of probation. That statute, in part, mandates that the state court "order supervision costs and fees of not less that fifty-five

---

[7] Gregerson contends that the defendants violated his inalienable rights under article I, section 1 of the North Dakota Constitution. Section 1 provides, "All individuals . . . have certain inalienable rights, among which are those of . . . acquiring, possessing and protecting property and reputation; . . . which shall not be infringed."

dollars per month." N.D. Cent. Code § 12.1-32-07(2). Additionally, the statute provides that, after termination of probation, the state court "may issue an order, after opportunity for hearing, to determine the amount of supervision fees and costs that are unpaid. The order may be filed, transcribed, and enforced by the [DOCR] in the same manner as civil judgments rendered by a district court of this state." Id. (emphasis added). That statute does not require the state to provide a court hearing to determine the amount of unpaid supervision fees—an amount which Gregerson does not contest. It simply permits the DOCR to obtain a court order to collect any unpaid supervision fees. Section 12.1-32-08(1)(c) states that, in determining whether to order restitution, the court should consider "[t]he likelihood that attaching a condition relating to restitution . . . will serve a valid rehabilitational purpose." That statute directs that the state court to take rehabilitation into consideration in ordering restitution, not that the defendants take it into consideration when requiring an individual to make payments toward his debts while incarcerated. In summary, none of the three statutes Gregerson cites impact his purported claims.

### Recommendation

Gregerson has not met the Twombly/Iqbal standard with regard to any of his claims. It is therefore **RECOMMENDED** that Gregerson's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted. Additionally, Gregerson's requests for injunctive relief should be **DENIED**. Because any appeal would be frivolous and could not be taken in good faith, it is further **RECOMMENDED** that the court find that any appeal may not be taken in forma pauperis.

Dated this 28th day of June, 2017.

>  */s/ Alice R. Senechal*
> Alice R. Senechal
> United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT[8]

Plaintiff may object to this Report and Recommendation by filing with the Clerk of Court no later than **July 12, 2017**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[8] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.